# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #005

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **30th day of January, 2018**, are as follows:

**PER CURIAM**:

2017-B -1473      IN RE: JOSEPH G. PASTOREK, II

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Joseph G. Pastorek, II, Louisiana Bar Roll number 30845, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

HUGHES, J., dissents and would order disbarment.
CRICHTON, J., dissents and would order disbarment.

SUPREME COURT OF LOUISIANA

NO. 2017-B-1473

IN RE: JOSEPH G. PASTOREK, II

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Joseph G. Pastorek, II, an attorney licensed to practice law in Louisiana, but currently on interim suspension based upon his conviction of a serious crime. *In re: Pastorek*, 12-0041 (La. 2/1/12), 80 So. 3d 1151.

**BAR ADMISSIONS PROCEEDING**

Before we address the current charges, we find it helpful to provide some background information concerning respondent's admission to the bar.

Respondent graduated from medical school in 1977. After completing his internship and residency in obstetrics and gynecology, he obtained board certification in general obstetrics and gynecology as well as maternal-fetal medicine (a sub-specialty of obstetrics which deals with complications of high-risk pregnancies).

In 2001, respondent returned to school, graduating from law school in December 2004. He passed the July 2005 Louisiana bar examination. However, the Committee on Bar Admissions opposed his admission to the bar, citing administrative proceedings which were then pending against him before the Louisiana State Board of Medical Examiners ("Medical Board"). These proceedings

involved allegations that respondent had violated the Louisiana Medical Malpractice Act by, among other things, engaging in improper consultation practices. After respondent and the Medical Board entered into a consent judgment resolving the administrative complaint in its entirety, the Committee on Bar Admissions withdrew its objection to respondent's admission. On December 15, 2006, this court rendered a per curiam opinion granting respondent's application for admission to the bar. *In re: Pastorek*, 05-2336 (La. 12/15/06), 944 So. 2d 564. Respondent took the oath of admission on January 9, 2007.

Against this backdrop, we now turn to a consideration of the misconduct at issue in the instant proceeding.

## UNDERLYING FACTS AND PROCEDURAL HISTORY

From 2004 to 2007, respondent worked as a prescribing physician for Global Pain Management, LLC ("Global"), a pain clinic with offices located in the greater New Orleans area. Global also operated a clinic in Pensacola, Florida. While employed at Global, respondent's prescription practices came under investigation by federal authorities. The government characterized the Global clinics as "pill mills" and claimed that respondent was purporting to provide "pain management" treatment for chronic pain patients, when in truth and in fact he was unlawfully distributing Schedule II, III, and IV controlled substances through prescription practices done outside the usual course of medical practice and for other than legitimate medical purposes.

In September 2010, respondent was indicted by a federal grand jury in the Northern District of Florida, Pensacola Division, on charges that he and his co-defendants conspired to unlawfully distribute prescription painkillers. According to the indictment, respondent wrote prescriptions to patients for drugs including oxycodone, methadone, Xanax, and hydrocodone in exchange for cash fees for

2

office visits.[1]  Over a four-year period between 2004 and 2008, respondent and another physician saw 40-80 patients each day; in total, Global collected over $8.5 million in cash proceeds from patients during that time period.[2]  The indictment further alleged that one or more deaths had resulted from these prescription practices, specifically the use of methadone; however, the government ultimately could not establish this allegation.[3]

A six-week jury trial was conducted beginning in October 2011.  During the trial, the government's expert in the field of pain management, addiction medicine, and the prescription of controlled substances testified that after reviewing 96 patient files that were seized by the government, he concluded that Global's prescription practices were dangerous, not consistent with the usual course of medical practice, and not for legitimate medical purposes.  On the other hand, respondent's expert in pain management reviewed the same 96 patient files and concluded that the pain medications were prescribed to patients for legitimate medical reasons and were done so within the accepted standard of care of the practice of pain medicine.

At the conclusion of the trial, respondent was found guilty of conspiracy to dispense Schedule IV controlled substances.[4]  Respondent filed a motion for new trial, which was denied by the district court.

Prior to respondent's sentencing, the United States Probation Office prepared a presentence investigation report ("PSR").  In relevant part, the PSR indicated that,

---

[1] Patients normally were required to pay $200 in cash per bi-weekly visit, or $400 monthly.  No insurance claims or medical coverage payments were accepted.

[2] Respondent was paid an hourly salary in connection with his employment at Global.

[3] In an attempt to show that respondent's prescription practices played a role in the death of one of his patients, the ODC introduced into evidence at the hearing on the formal charges a coroner's report showing that his patient, E.A., died as a result of her use of methadone prescribed by respondent.  At the criminal trial, evidence of the cause of E.A.'s death had been excluded due to the government's inability to offer testimony by the toxicologist who produced the toxicology report.

[4] In addition to the conspiracy charge relating to the distribution of painkillers, respondent's co-defendants were also charged with and found guilty of conspiracy to commit money laundering.

3

according to the government, there were no statutorily defined "victims of the offenses" of respondent's conviction because the government could not establish that respondent's conduct resulted in the deaths of any patients. This portion of the PSR was adopted by the district court, and no order of restitution was imposed upon respondent. The district court also determined that there were no vulnerable victims in this case. In January 2013, respondent was sentenced to serve one year and one day in federal prison, followed by one year of supervised release.[5] Respondent served his incarceration and successfully completed the obligations of his supervised release as of January 14, 2015.

On September 1, 2015, the United States Eleventh Circuit Court of Appeals affirmed respondent's conviction. *United States v. Pastorek*, 625 Fed. Appx. 464 (11th Cir. 2015) (not designated for publication). On April 18, 2016, the United States Supreme Court denied respondent's petition for writ of certiorari; his conviction became final upon the Supreme Court's denial of rehearing on June 13, 2016.

Meanwhile, as a result of respondent's prescription practices, he had once again become the subject of an inquiry by the Medical Board. Addressing the cases of sixteen Global patients whom respondent failed to adequately or appropriately examine before prescribing controlled substances, the Medical Board found in its report that respondent had shown "an egregious disregard of both the letter and the spirit of the" Pain Management Rules, 46 La. Admin. C., Part 45. In November 2007, respondent was fined $5,000 and his license to practice medicine in Louisiana

---

[5] Respondent faced 36 months in federal prison under the federal sentencing guidelines, but the district judge departed below the guideline range. She took into account respondent's "extraordinary family issues," including his responsibilities to his mentally disabled adult son and to his wife, who suffers from cancer; respondent's age; his previously reputable medical career; the loss of his medical license and the loss of his career; his lack of prior experience in pain management and the absence of law enforcement contact; and the fact that respondent was not the "ring leader" in the case.

was suspended for three years, effective immediately.[6] Notably, respondent was prohibited from practicing pain medicine for the remainder of his career.

## DISCIPLINARY PROCEEDINGS

In February 2012, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Respondent answered the formal charges and admitted that he was convicted of a felony; however, he requested that the disciplinary matter be stayed pending the appeal of his criminal conviction. The disciplinary board granted the motion to stay.

Following the finality of respondent's criminal conviction, the stay of the proceedings was lifted and this matter proceeded to a formal hearing, which was conducted by the hearing committee in September 2016. Prior to the hearing, the ODC filed a pre-hearing memorandum in which it argued that respondent should be permanently disbarred. In his pre-hearing memorandum, respondent argued that the appropriate sanction in this matter is a three-year suspension or disbarment, retroactive to the date of his interim suspension.

*Hearing Committee Report*

After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:

---

[6] According to the online records of the Medical Board, respondent's medical license remains suspended as of the date of this opinion.

Respondent was licensed to practice medicine in 1977. He attended law school from 2001 to 2004, and was licensed to practice law in 2007. His legal practice consisted of research, writing, and consulting on a contract basis while he continued his medical practice. From April 2004 to December 2007, respondent was employed in Louisiana as a prescribing physician by Global, a pain clinic owned by a non-physician. As described by respondent and the Medical Board, Global may readily be characterized as a "pill mill."

In 2007, respondent (and others associated with Global) were indicted in federal court in Florida for alleged violations of federal law at Global's Louisiana clinics at which respondent was employed. Respondent was ultimately found guilty of Count One of the indictment, knowingly and willfully conspiring with others to dispense controlled substances in violation of federal law, specifically 21 U.S.C. § 841(a)(1). Count One further stated the offense involved a mixture containing methadone (a Schedule II drug) and other substances, resulting in one or more deaths, in violation of federal law, specifically 21 U.S.C. § 841(b)(1)(C), providing specific penalties where methadone is involved in a violation of 21 U.S.C. § 841(a)(1).

Respondent's activities as a physician at Global also resulted in the three-year suspension of his medical license by the Medical Board and a permanent prohibition on his practice of pain medicine. The Medical Board reviewed the records of sixteen of respondent's patients, finding clear violations of the Louisiana Pain Management Rules as well as principles of good medicine, unprofessional conduct, failing to satisfy prevailing and usually accepted standards of medical care, prescribing controlled substances without legitimate medical justification, and egregious disregard of the letter and spirit of the Pain Rules.

The coroner's report on the death of E.A., one of respondent's patients, found her death to be accidental, due to the serial causes: myocardial hypoxia due to

6

pulmonary atelectasis due to recent drug intake, and methadone was found in her system. Respondent testified that "we," i.e., the pain clinic, prescribed the methadone, but that the level found postmortem was within the therapeutic range. Based on the coroner's finding that methadone was a factor in E.A.'s death, the committee found respondent's prescription of methadone or failure to oversee the prescription of methadone subjected E.A. to an increased risk of death.

Based on these findings, and as respondent acknowledged, the committee found violations of Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct, as charged in the formal charges.

The committee determined that respondent violated duties owed to the public. The patients who visited Global were especially vulnerable, whether they were seeking medical help or improperly seeking controlled substances without medical justification. While respondent argues the federal court found Global's patients to be drug addicts in a symbiotic relationship with Global, the committee stated it would not "blame the victims." As found by the Medical Board, respondent acted knowingly, in reckless disregard of the Pain Management Rules, in prescribing controlled substances in inappropriate circumstances. While the evidence is not sufficient to determine that respondent's misconduct directly resulted in a patient's death, at a minimum it increased that risk and resulted in multiple failures to receive proper medical treatment (even if that treatment would have been denial of drugs). The applicable baseline sanction is disbarment.

The committee found no mitigating factors. While respondent has only been licensed to practice law since 2007, his misconduct arose directly out of his practice of medicine, in which he has been engaged since 1977. The committee rejected respondent's argument that his criminal conduct only related to his medical practice and not to his legal practice, noting that numerous cases find violations of the Rules of Professional Conduct unrelated to the practice of law.

7

The committee then turned to a consideration of the permanent disbarment guidelines. Guideline 5 specifies that permanent disbarment may be warranted for a felony conviction involving substantial damage to a person. While not precisely on point with the threat to person created by respondent's reckless prescription of controlled substances, the committee found the clearly increased risk of such substantial harm – and even death – to multiple patients is within the ambit of gravity illustrated by the guidelines.

Accordingly, the committee recommended respondent be permanently disbarred.

In his brief to the disciplinary board, respondent argued that the sanction recommended by the hearing committee is too harsh, and that the appropriate sanction in this matter is a three-year suspension or disbarment, retroactive to the date of his interim suspension.

*Disciplinary Board Recommendation*

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and are not manifestly erroneous. Respondent was convicted of a felony which conclusively establishes his guilt. Based on these findings, the board determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.

The board determined respondent violated duties owed to the public and the legal profession. Respondent knowingly and willfully engaged in a criminal conspiracy to improperly dispense controlled substances. Respondent's failure to properly examine, diagnose, and evaluate his patients for appropriate treatment or screen them for substance abuse and/or diversion caused them both actual and

potential harm, and also harmed the public.[7] Relative to the magnitude of the harm, the federal sentencing judge characterized the harm inflicted by respondent and others associated with Global as "serious bodily harm."[8]

The Opinion and Ruling of the Medical Board detailed the deficiencies in treatment of sixteen of respondent's patients. These findings indicate that respondent prescribed controlled substances to those with histories of drug abuse, in instances where there was nothing in the patient's record to justify narcotic therapy, and to a patient who was overmedicated. Relative to one patient with obvious indications that she was obtaining drugs from multiple sources, respondent continued to prescribe opiates and made no effort to wean the patient off controlled substances, even though she had indicated a desire to do so.

Harm was sustained not only by respondent's own patients, but also those to whom his patients diverted the narcotics. The fact that the drugs being prescribed by respondent were controlled substances protected by federal law is evidence enough that actual harm results when those substances reach the wrong hands.

In addition to the harm sustained by respondent's patients and the public, respondent caused harm to the legal profession. The public expects lawyers to abide

---

[7] As summarized in the opinion of the United States Eleventh Circuit Court of Appeals, the defendants, including respondent,

> ignored evidence that their patients were abusing the prescribed substances: they did not order routine and inexpensive drug screens to ensure that the patients were complying with the prescriptions, they refilled prescriptions early without questioning, they did not administer physical exams to ensure an underlying pathology, and they wrote blanket prescriptions based upon previous doctors' scripts.

[8] The federal judge stated:

> … [I]t was four years, … dozens of patients, serious bodily harm … by licensed medical doctors who had notice that the patients were drug seekers and that some of the patients were diverting drugs.
> And … with some of the patients, these red flags, if you will, were ignored, and they were treated, as the jury has found, without legitimate medical justification, …

by the law. Whenever a member of the bar engages in criminal conduct, it tarnishes the reputation of the membership of the bar as a whole. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined the baseline sanction is disbarment.

In aggravation, the board found a dishonest and selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, and illegal conduct. The board agreed with the hearing committee that no mitigating factors are present. While it may be true that respondent has no prior disciplinary record and is relatively inexperienced in the practice of law, these factors bear no weight concerning the attending circumstances and misconduct. The pattern of misconduct forming the basis of this matter commenced prior to respondent's admission as a lawyer and was unrelated to any experience or lack thereof in the practice of law. While it is also true that respondent has been subjected to other penalties or sanctions in the form of a felony conviction resulting in his serving actual time in prison, as well as the suspension of his medical license, the committee apparently found that these circumstances did not justify a reduction in the degree of discipline. The committee considered respondent's testimony relative to remorse and a cooperative attitude toward the proceedings and apparently found the testimony insufficient to establish these mitigating factors.[9] The board declined to disturb these findings.

Considering the conduct at issue, the board adopted the committee's recommendation of permanent disbarment. The board agreed with the committee

---

[9] For example, when asked during the hearing if he was remorseful, respondent's first words were, "Well I am extremely sorry what we were doing turned out to be something illegal." At no point during his response to the question did he indicate remorse for putting patients and the public in harm's way. Although he later testified that he accepted that the doctors at the clinic "did the wrong thing," he failed to demonstrate remorse for anything other than the adverse consequences he suffered as a result of his misconduct ("I am very sorry for [my misconduct] because I really valued the practice of medicine…"). Later, respondent acknowledged that, theoretically, ignoring pain protocols could harm patients, but testified, "I don't feel like that applies to us specifically or me specifically…" Lastly, respondent testified that he entered a not guilty plea "because I thought we were doing the right thing, at least I was, and that I could justify that, and apparently, the jury didn't agree."

that Guideline 5 of the permanent disbarment guidelines may not be precisely on point, inasmuch as the evidence was not sufficient to establish that respondent's misconduct directly resulted in a patient's death, but nevertheless significant harm was established through the federal court decisions and the Medical Board's opinion, as previously discussed. Moreover, the board found that proof of direct and actual harm to a specific individual is not necessarily contemplated in Guideline 5. *See In re: Meece*, 08-2980 (La. 4/13/09), 6 So. 3d 751, and *In re: Stephens*, 07-0180 (La. 4/27/07), 955 So. 2d 140 (both lawyers permanently disbarred for committing the crime of armed bank robbery; no evidence in either case to suggest that actual physical harm befell any of the individual victims of the crimes). Alternatively, if it is determined that Guideline 5 does not apply, the permanent disbarment guidelines are merely illustrative, and respondent's conduct is so egregious as to warrant that sanction even though the conduct does not definitively fit any of the specific guidelines. In support, the board cited *In re: Richard*, 14-1684 (La. 10/3/14), 148 So. 3d 923. In that case, a search incident to a traffic stop revealed approximately 200 Xanax tablets in the lawyer's vehicle. He was charged with possession with intent to distribute Schedule IV narcotics, but was later allowed to plead guilty to a misdemeanor paraphernalia charge. Finding the lawyer had conspired to sell controlled dangerous substances to an undercover narcotics officer, the court permanently disbarred the lawyer even though the conduct did not fit any of the specific permanent disbarment guidelines. The board concluded:

> Schedule IV narcotics are protected specifically because of their potential to cause harm to those who use them. Respondent used his medical license to prescribe drugs to patients as part of a "pill mill," disregarding the needs of his patients, as well as enabling drug seekers in diverting drugs. He did so knowingly and willfully. This conduct, which spanned a period of three to four years, endangered the well-being of multiple patients and members of the public. His callous and selfish conduct is no less egregious than that of the [respondents] in *Meece*, *Stephens*, and *Richard*…

Based on this reasoning, the board recommended respondent be permanently disbarred.

Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

**DISCUSSION**

Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent's crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); *In re: Boudreau*, 02-0007 (La. 4/12/02), 815 So. 2d 76; *Louisiana State Bar Ass'n v. Wilkinson*, 562 So. 2d 902 (La. 1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Perez*, 550 So. 2d 188 (La. 1989).

Here, respondent was convicted by a jury of conspiracy to dispense Schedule IV controlled substances. He committed this crime while he was employed as a prescribing physician for a pain clinic, described in the record as a "pill mill." This misconduct amounts to a violation of Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct, as acknowledged by the parties and as found by the hearing committee and the disciplinary board.

We agree with the assessment of the board that respondent knowingly violated duties owed to the public and the legal profession. His actions resulted in harm to his patients, the public, and the legal profession. The applicable baseline sanction in this matter is disbarment.

For the reasons articulated in its report, the board correctly found that the aggravating factors present in this case are a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, and illegal conduct. As to mitigating factors, the committee and the board should have noted and assigned appropriate weight to the following factors which are objectively applicable on the face of the record: the absence of prior discipline, inexperience in the practice of law, and the imposition of other penalties or sanctions. However, having considered these factors, we find that their weight is not sufficient to cause us to deviate downward from the baseline sanction of disbarment.

The committee and the board concluded that respondent's offenses are so egregious that he should be permanently disbarred. In support, reference is made to Guideline 5, although it is acknowledged by all concerned that it is not precisely on point with the facts of this case.

Guideline 5 provides that permanent disbarment may be warranted for instances of conviction of a felony involving physical coercion or substantial damage to person or property, including but not limited to armed robbery, arson, or kidnapping. A plausible argument can be made that this guideline applies to respondent's conviction of conspiracy to dispense Schedule IV controlled substances, given the substantial risk of bodily harm and death to which his patients and the public were exposed as a result of his dangerous prescription practices. Nevertheless, even if we were to agree with respondent and find that Guideline 5 is inapplicable, it is abundantly clear that the permanent disbarment guidelines are merely illustrative and are not intended to bind our decision-making process. *In re: Minor*, 12-1006 (La. 10/16/12), 100 So. 3d 319. Regardless of the fact that respondent's misconduct may not definitively fit any of the specific permanent disbarment guidelines, his conduct demonstrates a clear lack of moral fitness. Particularly when viewed in the light of his bar admission proceeding, it is fair to

13

say that respondent's behavior continues to place the public at risk and to tarnish the image of the legal profession. In order to protect the public and maintain the high standards of the legal profession in this state, we conclude that respondent should not be allowed the opportunity to return to the practice of law in the future.

Based on this reasoning, we find permanent disbarment is the appropriate sanction in this case. Accordingly, we will accept the disciplinary board's recommendation and permanently disbar respondent.

## DECREE

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Joseph G. Pastorek, II, Louisiana Bar Roll number 30845, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

No. 2017-B-1473

IN RE: JOSEPH G. PASTOREK, II

ATTORNEY DISCIPLINARY PROCEEDING

Hughes, J., dissents and would order disbarment.

**SUPREME COURT OF LOUISIANA**

**No. 2017-B-1473**

**IN RE: JOSEPH G. PASTOREK, II**

**ATTORNEY DISCIPLINARY PROCEEDING**

**CRICHTON, J.,** dissents and would order disbarment.